CHARLES CARGILL *vs.* CLARISSA ATWOOD *et als.*, Executrices.

Books of account of original entries are competent evidence of the sale of articles and the performance of services charged in them.

At common law a plaintiff might testify to the identity of such account books, and hence may testify to such identity in Rhode Island notwithstanding the death of the other party to the contract.

When in the ordinary course of business, advances and payments of cash are made matters of book account, they may be proved by the books like other account items.

Lumped sums are not admissible as book accounts.

In mutual accounts and dealings an obligation arises not from each item but from and for the balance only. The varying balance is the debt. Hence, the statute of limitations begins to run only from the date of the last item.

In *assumpsit* under the general issue the defendant may without special notice give evidence of anything which shows that the plaintiff ought not to recover. Hence:

*Held,* that a defendant in *assumpsit* was entitled to show that the items of a book account against him were in fact by agreement part payments of a debt due to him from the plaintiff.

DEFENDANTS' petition for a new trial.

*June* 12, 1893. TILLINGHAST, J. This is *assumpsit* for goods sold and delivered to, work and labor done and performed for, and cash advanced to John M. Cargill, defendants' testator in his lifetime. Pleas, the general issue and the statute of limitations.

At the trial of the case in the Court of Common Pleas, at the December Term thereof, 1892, the plaintiff recovered a verdict for $2,474.44. The defendants now petition for a new trial on the grounds of erroneous rulings on the part of the Court, and that the verdict was against the evidence.

The first contention of the defendants is, that there was no competent proof offered of the delivery of the goods charged to defendants' testator, or of the performance of the work and labor charged to him, the plaintiff having been wrongfully permitted to testify in the case as to the identity of his books.

We think the books of account produced by the plaintiff, supplemented by his oath, and identified by him and also by his clerk, Middleton, as being his regular books of original entries, were competent evidence to go to the jury of the sale and delivery of the goods, and the performance of the services charged therein, and also of the prices charged therefor. *Hagaman* v. *Case*, 4 N. J. Law, 370; *Ducoign* v. *Schreppel*, 1 Yeates, Pa. 347; 2 Amer. & Eng. Encyc. Law, 467, 468, and cases cited. We also think it was competent for the plaintiff to testify to the identity of said books of account notwithstanding the other party to the cause of action was dead, this being a case in which he could have been a witness for this purpose at the common law, and hence within the exception of Pub. Stat. R. I. cap. 214, § 33; 1 Greenleaf on Evidence, 13th ed. §§ 118, 119, and notes; Wood's Practice Evidence, §§ 143–145, and cases cited; *Dexter* v. *Booth*, 2 Allen, 559; *Green* v. *Gould*, 3 Allen, 465. The plaintiff's case was strengthened also, by evidence that the defendants' testator, in his lifetime had full access to said books of account, and himself, made a number of the entries, both on the debit and credit sides of the account in question.

The second contention of the defendants is that the items charged as cash in said account should not have been allowed, as they were not proper subjects of book account. It is doubtless true that cash loaned or advanced is not ordinarily the proper subject of book account, except at any rate, to a very limited amount; *Burns* v. *Fay*, 14 Pick. 8; *Kelton* v. *Hill*, 58 Me. 114; *Bassett* v. *Spofford*, 11 N. H. 167; yet, where in the ordinary course of business between the parties, cash advances as well as payments are made the subject of book account, we see no reason for holding that such items may not as well be entered on and proved by the books as the ordi-

nary items of account may be. That is to say, where the parties are in the habit of treating cash items, both on the debit and credit side of the account between them, as the proper subject of such account, the proof of the loan or advancement of money on the one side, or of the payment on account, of the same on the other, may be made by the production of the books, to the same extent as may the proof of the delivery of any other article. Wood's Practice Evidence, § 144. Under the proof in this case we think it was properly left to the jury to determine whether or not the cash items were proper subjects of book account. The presiding Justice instructed the jury very clearly as to the law applicable to such transactions, and left it for them to find whether or not the course of dealing between the parties was such that cash items might properly be made the subject of book account.

The bill of particulars filed in the case shows charges under the date of July 31, 1878, as follows:

| | |
|---|---:|
| "Stock and labor to May, 1876 | $159 01 |
| " " April, 1877 | 57 85 |
| Cottage at Vineyard, Mch. 6, 1876 | 300 00 |
| Furniture " " " | 100 00" |
| Shop on High St., 270 | 225 00 |
| Making a total of | $841 86 |

This amount the defendants contend should not have been allowed by the jury, there being no proof in support of the items except the said books; that the lumping of the accounts rendered them inadmissible as book accounts and that they are not proper subjects of such an account. We think the defendants' contention as to the first two of these items at any rate is correct. The charges do not appear at the beginning of the account as a balance brought forward from a previous account, as the dates would seem to indicate they might have been, but on the second page thereof, and each as having been made on July 31, 1878. There was no proof as to how these two items of $159.01 and $57.85 were made up, as to whether they ever appeared on any other account, or when they were in fact furnished, except that the first was

prior to May, 1876 and the second prior to April, 1877, both antedating the first entry in the very extended book account sued on. Nor was there any proof that these entries were made in accordance with the usual course of business between the parties. On the other hand they are merely lump charges, evidently made *out* of the ordinary course of business, and interjected into an account with which it does not appear that they have any connection. Rice on Evidence, 830, and cases cited; *Lynch* v. *Petrie*, 1 Nott & McCord, 130.

The court below evidently took the same view of the law, as the jury were expressly instructed "that the account should be itemized, and that lumping the accounts renders the entry inadmissible, and not a subject of book charge." The jury, however, must have disregarded said instruction, as they found a verdict for the full amount of the plaintiff's claim.

As to the other three items objected to, viz.:

"Cottage at Vineyard, Mch. 6, 1876........ $300 00"
"Furniture        "          "          " ........  100 00"
"Shop on High St., 270...................  225 00"

as there was evidence outside of the books that this property was transferred by the plaintiff to his father by mutual agreement, we think it was properly left to the jury to determine whether these charges were proven.

We do not think it was error on the part of the court below to rule that if there were mutual accounts between the parties, including items of debit and credit on each side, made within six years next before the commencement of the action, that no part of the account was barred by the statute of limitations. The books offered in evidence showed that there were mutual accounts between Charles Cargill and his father John M. Cargill, including items of debit and credit on each side, made by said John M. Cargill himself within six years of the date of the writ.

The law of mutual accounts is distinct from that of merchants' accounts, and is to the effect that in cases of mutual dealings between the parties no obligation is created in regard to each particular item but only for the balance, and it

is the constantly varying balance which is the debt. Such a state of facts implies that the parties have mutually consented that each item, in whosesoever favor it may be, shall not constitute an independent debt due immediately, to be paid or enforced at once, but that the items occurring from time to time in favor of the respective parties shall operate as mutual set-offs, and that the shifting balance, when either or both shall call for it, shall be the debt. This is the reason why the statute of limitations does not apply during such a state of mutual dealings. *Abbott* v. *Keith,* 11 Vt. 525.

When men deal with an express or implied agreement that what each sells or delivers shall, instead of giving rise to a demand payable at once, stand as a payment, or set-off for what has been or may be received from the other, their liability will be limited to, and depend upon the balance as finally disclosed, and the statute will not begin to run, until the date of the last item. For an elaborate discussion of this question, see *Gunn* v. *Gunn,* 74 Ga. 555, and cases cited; 13 Amer. & Eng. Encyc. Law, 765, 766.

The last ground of the defendants' petition for a new trial is that the court below refused to allow them to offer evidence that the goods, labor and cash charged against said John M. Cargill, were so charged upon a consideration previously executed by him, and not for the purpose of creating any indebtedness against him, but on the other hand to pay an indebtedness previously contracted by the plaintiff to him. In other words, as we understand it, the defendants offered to prove that said John M. Cargill and the plaintiff entered into an agreement, whereby the latter, in consideration of the conveyance to him by the former of a certain store and stock of goods therein, was to pay for the same in goods, labor and cash, the same to be credited to him from time to time as furnished, on account of said transaction, until the aggregate of such credits should balance his indebtedness to the former; and the defendants offered to show that the items which appear in the plaintiff's account as charges against said John M. Cargill were simply payments on ac-

count of the transaction aforesaid, and did not therefore, create any indebtedness against him.

We think it was error not to allow the defendants to offer proof that such was the agreement and understanding of the parties. The general issue in *assumpsit* puts the plaintiff upon proving his whole case, and entitles the defendant, without special notice, to give evidence of anything which shows that the plaintiff ought not to recover. 1 Wait, Actions & Defences, 396, and cases cited; 2 Greenleaf on Evidence, 13 ed. § 135; *Falconer* v. *Smith*, 18 Pa. St. 130. If the agreement between the parties was in fact such as the defendants offered to prove, then the sale and delivery of the goods charged to John M. Cargill, as well as the performance of the labor, and the payments of cash charged to him, were simply by way of performance of the said agreement on the part of the plaintiff, and did not have the effect to create a debt against said John, but simply to *pay* a debt which the plaintiff owed him. The defendants were attempting to show that said goods, &c., were in fact paid for in advance by the said John M. Cargill; that they "were furnished upon an executed consideration in pursuance of an antecedent duty, and that there never was a debt due for them for a single instant." *Starratt* v. *Mullen*, 148 Mass. 570, 697. In other words, if the agreement was as claimed by the defendants, no cause of action accrued to the plaintiff by reason of the sale and delivery to John M. Cargill of the goods charged, the work and labor done, or the cash paid, until, at any rate the aggregate value thereof exceeded the plaintiff's indebtedness to him. For, up to that time, each item of the plaintiff's bill was simply a payment on account of his indebtedness to said John M. Cargill, and hence could not be made the basis of a suit against him. *Phipps* v. *Mahon*, 141 Mass. 471; *Green* v. *Brown*, 3 Barb. S. C. 119.

The position taken by the plaintiff regarding the defendants' claim, viz., that it should have been interposed as a defence by way of set-off, to the plaintiff's account, is untenable, for the reason that, accepting the defendants' contention as true, which, for the purposes of this petition we are bound

to do, there was nothing to be set-off, the plaintiff's indebtedness to the defendants' intestate, having been paid in the manner aforesaid. That is, according to the defendants' claim, there was no mutual account between the parties.

For the errors specified, there must be a new trial.

*Petition granted.*

*Walter F. Angell,* for plaintiff.

*Andrew B. Patton,* for defendants.