HENRY H. PUTNAM

*vs.*

WILBUR A. GRANT et al.

Washington.   Opinion March 3, 1906.

*Estoppel.   Burden of   Proof.   Account   Books.   Failure ,to Itemize.   Evidence.*
*Verdict Justified.*

In an action to recover a balance of $418.88 due on a quantity of logs, it appeared that the plaintiff authorized the defendants to pay to a paper company on his account any sum which might be found due from him to that company, for an alleged overpayment by the latter for logs purchased by it of the plaintiff.   The defendants contended that in accordance with this authorization they had paid the balance sued for to the paper company on the plaintiff's account, and set up this payment in defense to the action brought against them by the plaintiff.

Also it was admitted by the defendants that at the time the plaintiff authorized them to make the aforesaid payment to the paper company, he protested that there was a mistake in his account with the paper company. Also at the trial the plaintiff contended that there was nothing due from him to the paper company and that the defendants had no authority from him to pay the paper company the amount claimed on his account.

*Held:*   (1) That the jury was authorized to find that the evidence did not create an estoppel against the plaintiff, as contended by the defendants, but did warrant the conclusion that the plaintiff authorized the defendants to pay to the paper company on the account of the plaintiff any sum which in fact might be found due from the plaintiff to the paper company.

(2) That it was incumbent upon the defendants taking upon themselves the burden of proving payment in the manner stated, to show by competent evidence that the plaintiff was indebted to the paper company, at the time the defendants assumed to make a settlement on his account. The defendants had essentially the same burden that the paper company would have had in a suit brought in its own name against the plaintiff, to recover the amount of this alleged overpayment for logs purchased of him.

It is well settled that when the entries in a book of accounts do not itemize the transactions recorded, but in fact comprise the details of several transactions, the book is not admissible as independent evidence.

In the case at bar, and for the purpose of proving that the plaintiff was indebted to the paper company by reason of having been overpaid on logs

sold by him to it, the defendants offered the paper company's account book called a "journal" authenticated by the testimony of the book-keeper who kept it, containing on the debit side of the paper company's account with the plaintiff a record of ten notes sent to the plaintiff, and on the other side a summary of credits. These entries did not purport to itemize the transactions to which they related, but in connection with them was an express reference to an "invoice book." Neither the "invoice book" nor the original scale bills from which some of the entries in the "journal" were made up, were produced in evidence by the defendants, nor any explanation given for their non-production.

*Held:* That under the facts as disclosed by the evidence, the jury was not chargeable with manifest error in reaching the conclusion that the evidence before them was not sufficient to warrant a finding that the plaintiff was indebted to the paper company on account of the alleged overpayment for logs.

On motion by defendants. Overruled.

Assumpsit to recover a balance of $418.88 alleged to be due on a quantity of logs sold by the plaintiff to the defendants June 1, 1898. Plea, the general issue. Tried at the April term, 1904, of the Supreme Judicial Court, Washington County. The defendants admitted that they owed the amount sued for, $418.88 with interest from June 1, 1898, unless they could prove payment. The defendants contended that the plaintiff was indebted to the Richards Paper Company by reason of an overpayment made by it to the plaintiff on logs purchased by it of the plaintiff nearly two years before the sale of the logs sued for in this action, and that the plaintiff had authorized them to pay to the Richards Paper Company, on his account, whatever sum might be found due from the plaintiff to the Richards Paper Company by reason of this alleged overpayment, and that in accordance with this authorization they had paid to the Richards Paper Company on the plaintiff's account, the sum sued for, to wit, $418.88.

The verdict was for the plaintiff for the full amount claimed, and the defendants filed a general motion to have the verdict set aside.

The case is fully stated in the opinion.

*B. W. Hewes and W. R. Pattangall,* for plaintiff.

*Heath & Andrews,* for defendants.

VOL. CI 16

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, PEABODY, JJ.

WHITEHOUSE, J. This was an action of assumpsit to recover a balance of $418.88, alleged to be due on a quantity of logs sold by the plaintiff to the defendants June 1, 1898. The defendants admitted in limine, that they were indebted to the plaintiff in the amount claimed, with interest from the time the logs were purchased, unless they could prove payment. The verdict was for the full amount claimed and the case comes to this court on a motion to set aside the verdict as against the evidence.

In setting up payment as a defense it was not claimed in behalf of the defendants that they had paid this balance of $418.88 directly to the plaintiff Putnam, but they contended that by Putnam's authority they had paid that amount to the Richards Paper Company, on Putnam's account.

In 1896 nearly two years before the sale to the defendants of the logs sued for in this case, Putnam had sold pulp logs to the Richards Paper Company, and his account with that Company had not been adjusted. The Paper Company gave its notes to Putnam for the logs to be delivered under the contract between them, and after the delivery of the last lot claimed to have discovered that the amount of the notes exceeded the value of the logs by $418.88, interest and discount being adjusted to June 1, 1898. The Paper Company had also purchased logs from the defendants and was indebted to them at the same time. Thereupon, as the defendants say, it was arranged by consent of all the parties, that instead of paying the amount sued for directly to Putnam the defendants should pay it to the Paper Company and that in pursuance of this arrangement it was allowed on their account against the Company. The defendants admit, however, that when Putnam consented to have the Paper Company's overpayment allowed on his account against the defendants, he protested that there was a mistake in the Company's account. At the trial Putnam contended that there was nothing due from him to the Paper Company and that the defendants had no authority from him to pay to the Company the amount claimed on his account.

The defendants further contended, however, that even if it should appear upon a full and legal adjustment, that Putnam was not indebted to the Richards Paper Company and that he never expressly authorized the settlement made by the defendants with the Paper Company on his account, yet by his statements and conduct he justified them in believing that he admitted the debt to the Paper Company and consented to its discharge in the manner proposed and that he was thereafter estopped from denying that there was such a debt or that it was so paid by the defendants.

It is the opinion of the court that the jury was authorized to find that the evidence did not create an estoppel against the plaintiff as contended by the defendants, but that the evidence did warrant the conclusion that Putnam consented to have the defendants pay to the Paper Company on his account any sum which in fact might be found due from him to the Paper Company.

It was accordingly incumbent upon the defendants taking upon themselves the burden of proving payment in the manner stated, to show by competent evidence that Putnam was indebted to the Paper Company, at the time the defendants assumed to make a settlement on his account. The defendants had essentially the same burden that the Paper Company would have had in a suit brought against Putnam in its own name, to recover the amount of this alleged overpayment for logs purchased of him.

The logs sold by Putnam to the Richards Paper Company comprising 800,000 feet or more appear to have been delivered at various times during the months of March, April, May and June, 1896, payment to be made by cash or note upon the delivery of each 100,000. The scale bills for each lot delivered were duly received and retained by the Paper Company, and a written statement purporting to show the number of feet in each lot of logs received, according to the scale bills, the price per thousand, a computation of the total value and the amount credited to him, was sent to Putnam at the end of each month. Letter-press copies of all these monthly statements of the items and details of the credits given were made on a book called an invoice book, which was kept in the custody of the Paper Company.

At the trial it appeared that due notice had been given to Putnam

to produce these original monthly statements, to be used as evidence in the case. Whether they were still in existence after the lapse of eight years and whether it was in the power of the plaintiff Putnam to produce them did not appear. They were not produced; and although no evidence was offered showing that either the original scale bills received by the Paper Company or the invoice book containing letter-press copies of the monthly statements, had been lost or destroyed, neither the invoice book nor the original scale bills were produced in evidence by the defendants, nor any explanation given of their non-production. But in lieu thereof the defendants offered the Paper Company's account book called a "journal," authenticated by the testimony of the book-keeper who kept it, containing on the debit side of this transaction a record of ten notes sent to Putnam between March 24 and June 30, aggregating $5700, and on the other side a summary of credits as follows:

        1896.
            March 31,        .        .        .        .        $ 1439.43
            April 30,        .        .        .        .            2042.19
            May 30,         .        .        .        .            1386.42
            June 30,        .        .        .        .              456.26

                                                    $ 5324.30
                                By balance,            375.70

                                                    $ 5700.00

These entries do not purport to itemize the transactions to which they relate, but in connection with them an express reference is made to "invoice book page 367 and 368." The book-keeper also testified that the "scale bills and receipts" were the sources from which he obtained the items constituting the "lumped sums" credited in the journal. The situation is clearly distinguishable from the common instance where entries have been copied into a journal from a slate or slips of paper or other temporary records which have been obliterated or destroyed. In such a case the journal may be admitted as original evidence. *Hall* v. *Glidden,* 39 Maine, 445, and cases cited. "The first regular and collected record is the original one, and it is

immaterial that it was made up from casual or scattered memoranda preceding it." 2 Wigmore on Ev. Sec. 1558. In the case at bar the entries in the journal do not purport to be copies of original slips or memoranda; they simply claim to record the results of the several computations made by the book-keeper from figures afforded by the "scale bills and receipts." Furthermore so far as appears these original papers are still in existence. In contending for the admissibility of the journal as a book of original credits, it was conceded at the trial, as shown by the report of the evidence, that the items from which the "lumped credits" in the journal were made up, could be "worked out by taking time enough, taking all the original scale bills and notes."

In *Rumsey* v. *N. Y. & N. J. Telephone Co.*, 49 N. J. Law, 322, the action was to recover for the rent and services of a telephone. It appears that the number of each service was entered at the time upon a slip and these slips were sent to the main office where the gross number of calls for each month was entered in a book and after the lapse of three months, the slips were destroyed. It was held that as the entries introduced were only footings of each month's detailed statement contained in the original memoranda sent to the office, the books had no claim to originality, and however useful they might be to refresh the memory of the book-keeper, they were not admissible as independent evidence. It will be noticed that the facts were strikingly analogous to those at bar, and although it affirmatively appeared that the slips had been destroyed, the books were excluded. Indeed the general rule is too familiar and well settled to require the citation of authorities, that when the entries do not itemize the transactions recorded, but in fact comprise the details of several transactions, the book is not admissible as independent evidence. 2 Encyc. of Ev. 618; *Earle* v. *Sawyer*, 6 Cush. 142; *Henshaw* v. *Davis*, 5 Cush. 145; *Cargill* v. *Atwood*, 18 R. I. 303; *Nichols* v. *Haynes*, 78 Pa. St. 174; *Corr* v. *Sellers*, 100 Pa. St. 169.

It was contended at the trial, as before stated, that the lumped credits were admissible as original and independent evidence, and the journal was allowed to go to the jury, but the case fails to show that the court specified the ground upon which the book was admitted.

It appeared, however, that the notes given by the Paper Company to Putnam had been destroyed and the record of them in the journal was obviously admissible to refresh the book-keeper's recollection in regard to the dates and amounts of the several notes. So, too, if the journal had been offered by Putman as evidence against the Paper Company, the entries of lumped sums credited to Putnam would have been competent as admissions on the part of the Paper Company that logs of the value credited had been received from Putnam. But when offered by the defendants in favor of the Paper Company to prove that no more than the amounts credited had been received from Putnam, the entries of these lumped sums credited to him were not admissible as independent evidence. They could not be deemed original evidence for the reasons above stated. They could not be received as secondary evidence because the extrinsic evidence as well as the nature of the entries themselves satisfactorily disclosed the existence of primary and better evidence.

But assuming that the journal was admitted for the purpose of enabling the book-keeper to refresh his recollection as a witness in regard to the credits as well as in regard to the notes, it does not appear what instructions, if any, were given to the jury respecting the usefulness of the entries as such memoranda. It is the opinion of the court, however, that in view of the existence of the scale bills as primary evidence, and of the invoice book which was available as secondary evidence after notice to produce the original monthly statements, the jury are not chargeable with manifest error in reaching the conclusion that the evidence before them was not sufficient to warrant a finding that the plaintiff Putnam was indebted to the Richards Paper Company, on account of the alleged overpayment, at the time of the transaction in question.

The entry must therefore be,

*Motion overruled.*