BANK OF PONETO ET AL. *v.* KIMMEL.

[No. 13,060. Filed November 12, 1929. Rehearing denied January 31, 1930. Transfer denied April 29, 1930.]

*Simmons, Dailey & Simmons, Clark J. Lutz* and *Fred A. Wiecking,* for appellants.

*Henry B. Heller, W. H. Eichhorn, F. W. Gordon, John H. Edris, C. E. Sturgis, R. W. Stine* and *E. D. Sturgis,* for appellee.

ENLOE, J.—This action was to recover an alleged balance of money held by the appellant bank, of money alleged by appellee to have been placed upon deposit with appellant in his checking account. Pending trial of the cause, the said bank was placed in the hands of William A. Kunkel, Jr., as receiver, and, by an amended complaint, he was also named as a party defendant.

The cause being at issue, was submitted to a jury, which returned a verdict for appellee in the sum of $25,000, and from the judgment rendered thereon this appeal is prosecuted. The only error properly assigned is the action of the court in overruling appellant's motion for a new trial, under which assignment the matters hereinafter considered are presented.

Appellants first present that the verdict of the jury is not sustained by sufficient evidence and is, therefore, contrary to law. In support of this contention, appellants say: The appellee failed to prove a demand for the payment of the money sued for, before bringing this action; that a proper demand upon a bank for money held by it upon deposit, in a checking account, should be by presenting to the bank during business hours the depositor's check, order, draft, receipt, or other writing for the payment of the money, in the amount desired, which writing, when honored, and in the

hands of the bank, will be evidence of payment; that, under the allegation in the complaint that the plaintiff had, before bringing suit, made a demand upon said bank for the payment of said money held by it, it was necessary for him to prove a proper demand upon said bank. Many authorities are cited which sustain the contention thus made by appellants. When we examine the complaint, however, we find that it also contains the averment that the appellant bank "denied any liability to plaintiff on account of said deposits." Here were two allegations—one that a demand had been made, and the other that the bank denied liability. If the bank had not, prior to the bringing of this suit, denied liability, then a demand should have been made, and, upon the trial, proof of such demand should have been made. But if, prior to the bringing of this suit, the bank had denied all liability to appellee, then no formal demand upon it was necessary; the law does not require the doing of useless things, and the denial of liability operated to waive any formal demand. *First Nat. Bank* v. *Peck* (1913), 180 Ind. 649, 103 N. E. 643; *Fletcher, etc., Bank* v. *Crescent Paper Co.* (1923), 193 Ind. 329, 139 N. E. 664. The evidence is amply sufficient to sustain the averment in the complaint as to said bank denying all liability to appellee, and we, therefore, conclude that the above-stated contention of appellants is not well taken.

Appellants next present that the court erred in giving to the jury instruction No. 31 of the instructions given by the court of its own motion. The objection to this instruction is that it was on a matter not within the issues. In this contention we cannot concur. As before stated, the complaint not only alleged a demand, but it alleged that the bank denied all liability to appellee. The challenged instruction stated the law as to the effect of such denial. It was within the

issues and the court did not err in giving the same.

Appellants next contend that the court erred in giving instruction No. 9 of those given at the request of appellee, their objection being that it was not pertinent to the issues. In this contention we do not concur.

It had developed during the course of the trial that one Mounsey was the cashier of said bank during nearly all the time the transactions involved in this suit were being had; that he did not keep full, true and correct accounts of the transactions had by said bank with its depositors and customers, and that he became a defaulter to a considerable amount. The question of the liability of the bank to its depositors for the misconduct of its said cashier was thus involved herein; the said instruction was as to this liability, and the court did not err in giving the same.

Instruction No. 10 given at the request of appellee is next challenged. By this instruction, the jury were told that if they found for appellee, and that some sum of money belonging to him was in the hands of said bank when this action was commenced, appellee would be entitled to interest thereon at six per cent from the time he made a demand, if he did make a demand, or from the time the bank refused to make further payments to his order, if it did so refuse. There was no error in giving this instruction.

It is next urged that the court erred in refusing to give instructions Nos. 8, 9, 10 and 11, and each of them, of the instructions tendered and requested by appellant. The court did not err in refusing to give either of said instructions; they were each mandatory in form, and did not enumerate all of the issuable facts; each would have told the jury that they must find for appellants unless appellee had proved to their satisfaction, by a preponderance of the evidence, that he had made, in due and legal form, a demand for the money

before bringing suit. They entirely omitted the question as to a denial of liability on the part of said bank, and were, therefore, properly refused. *Southern Surety Co.* v. *Caverly, Admr.* (1924), 195 Ind. 247, 143 N. E. 626.

Appellants next complain of the action of the court in excluding from the jury the "blotter books" of said bank, and in not allowing certain entries therein contained to be read to the jury. It appears that the "blotter" was a book in which was entered simply debits and credits. The making up of this book was on the next day after the transactions took place. The checks issued by a patron of the bank and by it paid were, on the following day, totaled, and this total sum of checks paid was entered on this blotter. There was no entry of the separate checks, payee named therein, or of the amount thereof, hence, nothing by which the particular checks paid could be identified; the entries sought to be introduced were simply charges against appellee for cash paid out on his account. In the case of *Smith* v. *Rentz* (1892), 131 N. Y. 169, 30 N. E. 54, 15 L. R. A. 138, it was said: "The rule admitting account-books of a party in his own favor in any case, was a departure from the ordinary rules of evidence. It was founded upon a supposed necessity, and was intended for cases of small traders who kept no clerks, and was confined to transactions in the ordinary course of buying and selling or the rendition of services. In these cases some protection against fraudulent entries is afforded in the publicity which to a greater or less extent attends the manual transfer of tangible articles of property, or the rendition of services, and the knowledge which third persons may have of the transactions to which the entries relate. But the same necessity does not exist in respect to cash transactions. They are usually evidenced by notes, or writing, or vouchers, in the hands of the party paying or advancing the money. Moreover, entires of cash trans-

actions may be fabricated with much greater safety and with less chance of the fraud being discovered than entries of goods sold or delivered, or of services rendered. It would be unwise to extend the operation of the rule admitting a party's books in evidence beyond its present limits, as would be the case, we think, if books containing cash dealings were to be held competent."

In *Maine* v. *Harper* (1862), 4 Allen (86 Mass.) 115, it was said: "No book kept by a party was ever legal evidence, in this commonwealth, of payments of money made by him."

In *Jones* v. *Brick* (1824), 8 N. J. Law 269, Reprint p. 332, it was said: "A mere entry in a book of accounts, unexplained and unsupported by any other evidence, is not legal and sufficient to sustain a charge for cash paid to a third person not one of the parties to the suit, nor shown to be in anywise connected with them."

In *Rumsey* v. *New York, etc., Tel. Co.* (1887), 49 N. J. Law 322, 8 Atl. 290, the action was for rental of telephone, and for service (toll calls); a separate slip had been made for each call; the *total* charges noted on these slips was entered in the "daybook" and the slips forwarded to the central office, where, after entries had been made therefrom, they were destroyed. The trial court admitted in evidence the company's daybook, and this was held error, the court saying that these entries simply recorded, not the original transactions, but the result of a computation made by the bookkeeper.

In the case of *Cargill* v. *Atwood* (1893), 18 R. I. 303, 27 Atl. 214, two items in the account were, "'Stock and labor to May 1, 1876, $159.01,'" and "'Stock and labor to April 1, 1877, $57.85.'" The court held that these items were simply "lump charges" and not competent evidence.

In *Putnam* v. *Grant* (1906), 101 Me. 240, 63 Atl. 816, it was said: "These entries do not purport to itemize the

transactions to which they relate, . . . they simply claim to record the result of the several computations made by the book-keeper from figures afforded by the 'scale bills and receipts.' . . . Indeed the general rule is too familiar and well settled to require the citation of authorities, that when the entries do not itemize the transaction recorded, but, in fact, comprise the details of several transactions, the book is not admissable as independent evidence." See, also, Wigmore, Evidence (2nd. ed.) §§1539, 1549; and note in 2 L. R. A. (N. S.) 401 to the case of *Lewis* v. *England* (1905), 14 Wyo. 128, 82 Pac. 869.

It is next urged that the court erred in striking out a portion of the testimony of the witness Charles Mounsey. This witness, while testifying, had used the entries in the "blotter" heretofore mentioned to refresh his recollection; he had testified as to the manner of keeping said book, and as to the making of entries therein, and had testified as to the payment, by said bank, out of the funds of appellee on deposit, of numerous checks; but, on cross-examination, it developed that, after seeing said book and examining the entries therein, he had no independent recollection whatever of the several transactions; could not tell what checks or the several amounts thereof were included in the several "lump-sum" entries in said books; and that the witness was simply testifying from said books and not from memory. The court did not err in striking said testimony from the record.

Prior to the commencement of the argument, appellee, by counsel, had tendered a number of instructions, with the usual request that the court would, before the beginning of the argument, indicate which of said instructions would be given, and which refused. Of the instructions so tendered, the court, in writing, indicated that it would, among others, give instruction

No. 5, of those so tendered. These instructions were tendered, and the said request made, in accordance with the provisions of §587 Burns 1926. During the argument to the jury, one of counsel for appellee read to the jury, as the law of the case, said instruction No. 5. Said section of the statute specifically authorized the reading, under the circumstances noted, of said instruction to the jury. When the court came finally to instruct the jury, it did not give said instruction No. 5, but gave instruction No. 31, heretofore considered. Appellants have not pointed out, or indicated, any specific harm which came to them by reason of this action of the court, and it seems to us that if any person might have cause for complaint, as to this matter, it would be appellee and not appellant.

We have considered all alleged errors presented and conclude that none is well taken.

Affirmed.