**Glenna WININGER a/k/a Glenna Williams, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 87A01–8804–CR–140.

Court of Appeals of Indiana, First District.

Aug. 18, 1988.

Scales, Wissner & Krantz, Boonville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellant, Glenna Wininger (Wininger) appeals her convictions by the Warrick Circuit Court of two counts of conspiracy to utter a forged instrument.

We reverse.

### STATEMENT OF THE FACTS

This cause of action was initially commenced on March 11, 1983, at which time an Information was filed in Daviess County charging both Wininger and Verne Richardson (Richardson) with two counts of conspiracy to utter forged instruments. Count I of the Information alleged that Richardson and Wininger conspired to utter the forged will of Beryl Jane B. Crawford (Crawford). Count II alleged that Richardson and Wininger conspired to utter the forged Crawford assignment of six stock certificates of Interlake, Inc., representing 12,976 shares, to Wininger. Stanley Levco (Levco) was appointed as special prosecutor to handle the case, and trial commenced on April 24, 1984.

To support the forgery element the State produced two examiners of questioned documents who testified that the purported signatures of Crawford on the will and on the six stock certificates were forgeries. The jury trial in Daviess County resulted in guilty verdicts against Richardson and Wininger on both counts. These convictions were set aside on appeal, however, due to the admission and use of inadequately proven standards. *Richardson v. State*

(1985), Ind.App., 486 N.E.2d 1058. The prosecutor failed to establish the genuineness of Crawford's signature on any of the exhibits used as standards for comparison by the experts, and we ordered the trial court to grant a new trial. *Id.*

This cause was subsequently venued to Warrick County for retrial. Levco remained as special prosecutor and retrial commenced on April 20, 1987. As was the case in the first trial, proof that Wininger forged Crawford's signature on the will and the stock certificates was a critical element to be established by the State on retrial. This necessarily involved proving the genuineness of Crawford's signature on the standards of comparison to be used by the expert examiners to determine whether the questioned signatures on the will and stock certificates were forgeries. To this end the State produced Carl Gray (Gray), a 91 year old attorney who had previously represented Crawford. Gray was called by the defense at the first trial to establish the genuineness of Crawford's signature on the exhibits upon which the experts for the defense testified that the will and six stock certificates had not been forged. Through Gray, the State introduced the same series of documents, hereinafter referred to as exhibits 1000–E through 1000–O, purporting to carry Crawford's genuine signature. Although in the previous trial Gray testified that he had seen Crawford sign exhibits 1000–E through 1000–O, he had no current recollection of having seen her sign such documents. After examining a transcript of his previous testimony, Gray acknowledged that in 1984 he testified that he had witnessed Crawford sign exhibits 1000–E through 1000–O. He continued to assert, however, that he had no present recollection as to whether he saw Crawford sign the documents. The trial court admitted the exhibits over Wininger's strenuous objection that the genuineness of Crawford's signature appearing on such had not been properly established. Subsequently, the State produced Clark Mercer (Mercer), an examiner of questioned documents for the Indiana State Police. He testified that he

used exhibits 1000–E through 1000–O as standards of comparison. Over objection, Mercer testified that after comparing the exhibits with the questioned documents, it was his opinion that the will and stock certificates were not authored by the same person. In essence he testified that the will and stock certificates had been forged. From a sentence of imprisonment, Wininger has instituted this appeal.

## ISSUES

Wininger presents the following issues for our review:

I. Whether the trial court erred in allowing exhibits 1000–E through 1000–O to be admitted as genuine standards of Crawford's signature, and thereafter allowing an expert to testify as to his opinion concerning the exhibits.

II. Whether the trial court erred in denying Wininger's objection to the appointment and authority of the special prosecutor.

## DISCUSSION AND DECISION

ISSUE I: *Handwriting Standards*

This issue is the principal thrust of Wininger's appeal. Exhibits 1000–E through 1000–O were admitted into evidence for purposes of comparison by the State's expert with questioned documents maintaining Crawford's purported signature. Wininger contends, however, that the trial court erred in admitting the exhibits because the genuineness of Crawford's signature on such was not properly established.

The admissibility of handwriting standards for purposes of determining the genuineness of other questioned handwriting is governed by IND. CODE 34–3–6–1 which states:

In any proceeding before a court or judicial officer of the State of Indiana where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court or officer conducting such

proceeding, to prove or disprove such genuineness.

Before evidence of comparison may be given, however, the genuineness of the handwriting serving as the standard of comparison must be established. Quoting from *Plymouth Savings & Loan Ass'n. No. 2 v. Kassing* (1919), 72 Ind.App. 1, 125 N.E. 488, this court in *Richardson, supra,* stated in part:

We believe the true rule deduced from the authorities to be that the genuineness of a "standard" writing may be established (1) by the admission of the person sought to be charged with the disputed writing made at or for the purpose of the trial or by his testimony; (2) by witnesses who saw the standards written or to whom or in whose hearing the person sought to be charged acknowledged the writing thereof; (3) by evidence showing that the reputed writer of the standard has acquiesced in or recognized the same, or that it has been adopted and acted upon by him in his business transactions or other concerns.

486 N.E.2d at 1062. The admission of standards without proper proof is error. *Wells v. State* (1970), 254 Ind. 608, 261 N.E.2d 865. Exhibits 1000–E through 1000–O were the only documents which the State sought to introduce at trial as standards of Crawford's genuine signature. The State relied upon only the second method listed above in order to establish the genuineness of those signatures. Accordingly, in order for those exhibits to have been properly admissible as standards at trial, the witness through whom the exhibits were introduced must have testified that he saw the individual whose genuine signature is sought to be established sign them.

Exhibits 1000–E through 1000–O were introduced through Gray. Gray testified as related above in the Statement of Facts. In essence he had no present recollection of having witnessed Crawford sign any of the exhibits. After examining a transcript of his prior testimony, however, Gray acknowledged that in 1984 he testified that he had witnessed Crawford sign the exhibits. Over objection, the trial court admit-

ted exhibits 1000–E through 1000–O as genuine standards of Crawford's signature. Further, Mercer expressed his opinion that the will and stock certificates as well as other documents had been forged based upon his comparison of the questioned documents with these exhibits. Wininger assigns this as error on appeal.

The evidence relating to the genuineness of Crawford's signature on the standards was admissible under three distinct theories. Under the rules applicable to the doctrine of present memory refreshed, a witness may refresh his memory by examining a writing prior to or during his testimony. *Cheney v. State* (1985), Ind., 486 N.E.2d 508; *Gaunt v. State* (1983), Ind., 457 N.E.2d 211; *Carter v. State* (1980), Ind.App., 412 N.E.2d 825. The witness is permitted to refresh his memory from a variety of writings including transcripts of prior testimony. *Gaunt, supra; Ward v. State* (1982), Ind., 438 N.E.2d 966; *Ehrisman v. Scott* (1892), 5 Ind.App. 596, 32 N.E. 867. However, the testimony given by the witness after examining the writing must be based upon the writing used to refresh his recollection. *Southern Railway v. State* (1905), 165 Ind. 613, 75 N.E. 272; *Johnson v. Culver* (1889), 116 Ind. 278, 19 N.E. 129. If the witness's memory is refreshed, he may be examined on the subject but may not testify from the writing itself. *Bank of Poneto v. Kimmel* (1929), 91 Ind.App. 325, 168 N.E. 604.

■ If, on the other hand, the witness's memory is not refreshed, the document itself may be received into evidence, or the witness may be permitted to read it to the jury. *Gee v. State* (1979), 271 Ind. 28, 389 N.E.2d 303; *Blinn v. State* (1986), Ind. App., 487 N.E.2d 462. The use of a previously recorded statement as substantive evidence rather than as a method to refresh a witness's fading memory is permitted under the rules applicable to past recollection recorded. In order for a writing to qualify as a past recollection recorded, the witness must have personal knowledge of the event which he contemporaneously recorded or adopted, if recorded by another, while he had a clear memory of it. *Gee,*

*supra.* Under this doctrine, the witness's lack of memory serves as the vehicle for the admission of the written memorialization of the knowledge he once had. The party offering the writing must establish that the witness has no present recollection of the events to be proven in order for the writing to be admitted. *Blinn, supra; Richardson v. State* (1971), 255 Ind. 655, 266 N.E.2d 51.

■ Finally, the former testimony exception to the hearsay rule permits the use of testimony from a prior judicial proceeding in a later trial. *Bryant v. State* (1979), 270 Ind. 268, 385 N.E.2d 415; *Schwartz v. State* (1978), 177 Ind.App. 258, 379 N.E.2d 480. Under this exception the proponent of the evidence must establish: (1) the testimony was given under oath at a former judicial proceeding; (2) the party against whom the testimony is now offered had an opportunity and motive to cross-examine at the prior proceeding; and (3) the witness was unavailable at the time of the later proceeding. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214; *Pollard v. State* (1979), 270 Ind. 599, 388 N.E.2d 496; *Burnett v. State* (1974), 162 Ind.App. 543, 319 N.E.2d 878. In addition, the issues at the earlier trial must have been sufficiently similar to those involved in the later proceeding that the party against whom the evidence is offered had a similar motive to cross-examine the witness. *Moore v. State* (1984), Ind., 467 N.E.2d 720; *Bryant, supra.* When these elements are established, the former testimony may be proved by the testimony of the stenographer from the earlier proceeding, *Sekularac v. State* (1933), 205 Ind. 98, 185 N.E. 898, by the transcript of the present court reporter who listened to the recordings of the earlier trial, *City of Indianapolis v. Parker* (1981), Ind.App., 427 N.E.2d 456, or by a transcript duly certified by the reporter of the former testimony. Ind. Rules of Procedure, Trial Rule 74(E).

■ The State, however, failed to properly establish the genuineness of Crawford's signature on the exhibits under any of the above theories. After a close inspection of the record it is quite evident that

the 1984 transcript never refreshed Gray's memory. Upon being permitted to examine the transcript of his testimony from the 1984 trial, Gray acknowledged he had previously testified that he witnessed Crawford sign the documents. Gray repeatedly stated throughout his testimony, however, that he had no present recollection of witnessing Crawford sign such. Clearly, Gray's memory was not refreshed. Rather, he was merely testifying from the transcript of his previous testimony. His testimony being inadmissible under the doctrine of present memory refreshed, the State failed to prove the genuineness of Crawford's signature under this theory.

The State contends, however, that Gray's testimony was properly admitted under the doctrine of past recollection recorded. The State's reliance upon this theory is misplaced. Under the doctrine of past recollection recorded, a previously recorded statement may be admitted as substantive evidence. The event to be proved, however, may not be established by oral testimony. Rather, it is the writing itself which is admitted. It serves as a substitute for the direct testimony of the witness whose memory has failed. Accordingly, Gray's testimony regarding the genuineness of Crawford's signature was not admissible under this theory.

We agree that once it became apparent that Gray had no present recollection of the events about which he was called to testify, it would have been proper to admit a previously recorded statement regarding such events into evidence or permit him to read it to the jury. The State argues, therefore, that the transcript of Gray's prior testimony regarding the subject was adequate evidence proving the genuineness of Crawford's signature. We note that the event to be proved was that Gray witnessed Crawford sign the exhibits. The exhibits were a series of documents prepared by Gray and his associates while representing Crawford in 1973 and 1974. The transcript of Gray's testimony given in 1984 cannot be said to be a contemporaneous record of events which transpired in 1973 and 1974. Having failed to meet the requirements to qualify as a past recollection recorded, the 1984 transcript of Gray's testimony was not admissible. Finally, assuming it was admissible, which we do not, the State fails to recognize that the transcript was not admitted into evidence nor were relevant portions read to the jury. The State, therefore, failed to establish the genuineness of Crawford's signature under this theory.

Likewise, the State failed to prove the genuineness of Crawford's signature under the former testimony exception to the hearsay rule. As mentioned above, the State failed to produce a certified transcript of Gray's testimony at the 1984 trial. Nor did the State produce the testimony of either the stenographer from the earlier trial or the stenographer from the current proceedings who may have listened to the recordings of the earlier trial. Moreover, the State failed to affirmatively establish any of the foundational requirements necessary to secure the admission of the former testimony in the present trial. Accordingly, because the standards were not properly proven under any of the applicable theories, the trial court erred in admitting the exhibits as genuine standards of Crawford's signature.

Moreover, the error cannot be considered harmless. In the present case, Mercer was the only expert who testified for the State. He based his opinion that the questioned documents were forgeries upon exhibits 1000–E through 1000–O. Gray was the only witness called to establish the genuineness of Crawford's signature on those exhibits. In addition, Mercer considered exhibit 1000–D, a cancelled check, when comparing the signatures. In short, Mercer based his opinion on 11 inadequately proven standards out of 12 offered. Moreover, in his testimony Mercer stated that he based his opinion on a comparison of the questioned documents with all of the exhibits as a group. He did not rely on any one particular exhibit. Because he lacked proper standards, however, he could not make a legitimate comparison with the questioned documents. Since proof of forgery was essential to the State's case, and its standards were not properly proven, clear prejudice exists. Accordingly, this cause is

reversed on this issue, and the trial court is ordered to grant Wininger a new trial.

ISSUE II: *Special Prosecutor*

Wininger also complains that the trial court erred in permitting special prosecutor Levco to retain his original appointment and prosecute this cause on retrial. This issue was raised in the previous appeal of this action and because it is likely to arise on retrial we will address it now.

IND. CODE 33–14–1–6 governs the appointment of special prosecutors and provides in part:

(a) Special prosecutors may be appointed only in accordance with this section.

(b) A circuit or superior court judge:

(1) shall appoint a special prosecutor if:

(A) any person other than the prosecuting attorney or his deputy files a verified petition requesting the appointment of a special prosecutor; and

(B) the prosecuting attorney agrees that a special prosecutor is needed;

(2) may appoint a special prosecutor if:

(A) a person files a verified petition requesting the appointment of a special prosecutor; and

(B) the court finds by clear and convincing evidence that the appointment is necessary to avoid an actual conflict of interest or there is probable cause to believe that the prosecutor has committed a crime; and

(3) may appoint a special prosecutor if:

(A) the prosecuting attorney files a petition requesting the court to appoint a special prosecutor; and

(B) the court finds that the appointment is necessary to avoid the appearance of impropriety.

This cause was originally commenced in Daviess County on December 20, 1982, at which time E. Brayton Smoot, the Daviess County Prosecutor during the four year period preceeding January 1, 1983, initiated an investigation into the circumstances surrounding this matter. Having been defeated in the election, he requested the appointment of a special prosecutor to continue the investigation. In January of 1983 the trial court appointed Levco special prosecutor. Several months later, Daniel Steiner, the newly elected prosecutor, filed an affidavit in support of that appointment, alleging the appearance of impropriety due to his past association with both Wininger and Richardson. Prior to the first trial Wininger and Richardson filed a motion to dismiss, challenging Levco's authority. The trial court overruled the motion to dismiss and permitted Levco to continue as special prosecutor.

On appeal, Wininger and Richardson argued that an outgoing prosecutor cannot disqualify an incoming prosecutor and therefore Levco's continuing appointment as special prosecutor instituted at Smoot's request was improper. In support of this proposition they cited *State ex rel. Goldsmith v. Superior Court of Hancock County* (1979), 270 Ind. 487, 386 N.E.2d 942. In *Goldsmith* our supreme court held that the petition to withdraw filed by an outgoing prosecutor cannot bind an incoming prosecutor. However, we upheld the trial court's denial of the motion to dismiss. Citing IND. CODE 33–14–1–6(b)(2)(B) we held that the incoming prosecutor's affidavit disqualifying himself removed the case from the operation of *Goldsmith*. *Richardson*, 486 N.E.2d at 1062. Therefore, Levco's appointment was not improper and would continue until challenged. *Id.*

On January 1, 1987, prior to the retrial of this cause, Greg Smith became the new prosecutor, replacing Steiner. Wininger points out that no affidavit had been filed by Smith alleging his disqualification from serving as prosecutor of this matter. No disqualification having been filed by the current prosecutor, Wininger contends that this case now falls squarely within the reasoning of *Goldsmith, supra*. In other words Steiner's disqualification cannot be imputed to Smith and absent an affidavit of disqualification on his part, he should prosecute the case. Wininger maintains that in light of these circumstances, it was error for the trial court to allow Levco to continue as special prosecutor over her objection.

■ We agree that absent compliance with the eligibility requirements under

IND. CODE 33–14–1–6, it would be improper for an individual to continue as a special prosecutor. In the present case, there has been no affidavit filed by Smith alleging a conflict of interest nor has there been a finding that Levco's appointment is necessary to avoid the appearance of impropriety. Thus, under the authority of *Richardson* and *Goldsmith,* it was improper for Levco to continue as the special prosecutor. We note, however, that Wininger proceeded improperly in attempting to challenge the continued validity of Levco's appointment.

The acts of a de facto public official may not be challenged collaterally. *Cox v. State* (1986), Ind., 493 N.E.2d 151; *Goldsmith, supra; Bagnell v. State* (1980), Ind.App., 413 N.E.2d 1072; *King v. State* (1979), Ind.App., 397 N.E.2d 1260. The validity of the acts of a public official may only be challenged by a direct challenge against the individual who purports to hold the office. *Id.* This rule applies to prosecutors as well as other public officials. *State ex rel. Crowmer v. Superior Court of Marion County* (1957), 237 Ind. 633, 146 N.E.2d 88. Levco, holding the position of special prosecutor under color of appointment, was a de facto public official. The proper remedy for challenging the validity of his appointment and the validity of his acts necessitated a direct challenge by the filing of an application for a writ of prohibition in our supreme court pursuant to the Indiana Rules of Procedure for original actions. Levco's appointment not being subject to the type of attack mounted against it, the trial court did not err in permitting him to continue as special prosecutor of the case.

For the above reasons, this cause is reversed and the trial court is ordered to grant Wininger a new trial.

Judgment reversed.

ROBERTSON and MILLER, JJ., concur.