## SOUTHERN RAILWAY COMPANY *v.* THE STATE.

[No. 20,714. Filed October 4, 1905. Rehearing denied December 12, 1905.]

1. REMOVAL OF CAUSES.—*Diverse Citizenship.*—*States.*—A state is not a citizen of any state, and an action by a state against a foreign corporation is not removable to the federal court on the ground of diverse citizenship. p. 616.

2. SAME. — *Diverse Citizenship.* — *Real Parties.* — *State.* — The state is the real party in an action by it to collect a penalty for the violation of a statute, though one-half of such penalty goes to the prosecuting attorney and one-half to the county for the use of the common school fund. p. 617.

3. PLEADING.—*Complaint.*—*Railroads.*—*Failure to Report Arrival of Trains.*—*Penalties.*—A complaint against a railroad company for its failure to report the arrival of its passenger-trains at its station as required by §§5186, 5187 Burns 1901, Acts 1897, p. 176, Acts 1889, p. 279, §2, which substantially follows in the language of such statutes is sufficient. p. 618.

4. TRIAL.—*Instructions.*—*Evidence.*—*Whether Jury "May" or "Should" Consider.*—The refusal of the court to instruct that the jury "should" consider, in determining the weight to be given their testimony, the promise of the prosecuting attorney to pay witnesses in the event plaintiff should win the case is reversible error. p. 620.

5. SAME.—*Instructions.*—*Evidence.*—*Whether Jury "May" or "Should" Consider.*—The giving of an instruction by the court without objection that the jury "may" consider a witness's interest in the result of the action in determining the weight to be given his testimony is not alone reversible error. p. 623.

6. TRIAL.—*Instructions.—Evidence.—Limiting Application of.*—
An instruction that the jury should consider the interest of the
witness in the result of the action in determining the credibility
of his testimony, but for no other purpose, is not erroneous.
p. 623.

7. SAME.—*Instructions.—Right of Party to Subpoena and Trans-*
*port Witnesses.*—An instruction that a party has the right to
subpoena and transport his witnesses, where there is evidence
on such subject, is proper, though a refusal to give same is not
reversible.    p. 624.

8. EVIDENCE.—*Memory.—Refreshing by Memoranda.*—A witness
may refresh his memory by referring to concurrent memoranda,
but he must have some recollection of the fact apart from such
memoranda.    p. 624.

9. SAME.—*Memoranda.—Private.*—Private memoranda, not made
in the ordinary course of business, of the failure of a railroad
company to post the time of arrival of its passenger-trains, are
not admissible in evidence.    p. 625.

10. TRIAL. — *Motion to Strike Out Evidence. — Certainty.* — A
motion to strike out evidence must be specific, and if it include
any competent evidence, it should be overruled.    p. 626.

11. SAME.—*Motion to Strike Out Evidence.—Reasons.*—A motion
to strike out evidence must state the reasons therefor.    p. 626.

12. EVIDENCE.—*Refreshing Memory by Memorandum.—Copy.*—
Where a witness desires to refresh his memory from a copy of
a memorandum, he must show that the original is lost.    p. 626.

13. TRIAL.—*Requiring Plaintiff to Elect on Which Paragraph He*
*Relies.*—Where the State files a complaint in 404 paragraphs
against a railroad company for that number of separate viola-
tions of the statute (§§5186, 5187 Burns 1901, Acts 1897, p. 176,
Acts 1889, p. 279, §2) requiring such companies to post the time
of arrival of passenger-trains, a motion by defendant to require
plaintiff to elect on which paragraph it will try, should be over-
ruled.    p. 626.

14. STATUTES. — *Construction. — Railroads. — Posting Time of*
*Arrival of Trains.—Penalty.*—Section 5187 Burns 1901, Acts
1889, p. 279, §2, provides a penalty for "each violation" of such
act and not a single penalty for all violations.    p. 627.

From Dubois Circuit Court; *E. A. Ely,* Judge.

Action by the State of Indiana against the Southern Rail-
way Company. From a judgment for plaintiff, defendant
appeals. Transferred from Appellate Court under subd. 2,
§1337j Burns 1901, Acts 1901, p. 565, §10. *Reversed.*

Southern R. Co. *v.* State—165 Ind. 613.

*A. P. Humphrey, John D. Wellman, M. W. Fields* and *Bretz & McFall,* for appellant.

*Leo H. Fisher,* prosecuting attorney, *W. E. Cox, W. S. Hunter, A. L. Gray, H. M. Kean* and *C. F. Coffin,* for appellee.

JORDAN, J.—The State of Indiana, by the prosecuting attorney of the proper judicial circuit, instituted and prosecuted this action against appellant, under §§5186, 5187 Burns 1901, Acts 1897, p. 176, Acts 1889, p. 279, §2, on account of its failure to report the arrival of certain passenger-trains as required by the provisions of the first-mentioned section. Trial by jury. Verdict and judgment for $4,500. Sections 5186, 5187, *supra,* read as follows: "Section 5186. That every corporation, company or person operating a railroad within this State, shall immediately after taking effect of this act, cause to be placed in a conspicuous place in each passenger depot of such company located at any station in this State, at which there is a telegraph office, a blackboard at least three feet long and two feet wide, upon which such corporation, company or person, shall cause to be written, at least thirty minutes before the schedule time for the arrival of each passenger-train stopping upon such route at such station, the fact whether such train is on schedule time or not, and if late, how much: Provided, however, that any device, indicator or register, painted or printed in large letters and figures giving the required information set forth in this act, in a more legible form than is practicable on a blackboard, may be substituted in place of said blackboard: and, provided further, that the provisions of this act shall not apply to any freight-train carrying passengers or any train carrying both freight and passengers, or to any station during hours when railroad companies do not regularly have a telegraph operator or operators on duty at any such telegraph office." "Section 5187. That for each violation of the provision of this act,

in failing to report or in making a false report, such corporation, company or person so neglecting or refusing to comply with the provisions of this act, shall forfeit and pay the sum of $25, to be recovered in a civil action to be prosecuted by the prosecuting attorney of the county in which the neglect or refusal occurs, in the name of the State of Indiana, one-half of which shall go to said prosecuting attorney, and the remainder shall be paid over to the county in which such proceedings are had, and shall be part of the common school fund." This latter section since the commencement of this action has been amended by providing therein that the total amount of recovery for all violations at any one station by any one corporation, company or person to the time of filing the complaint shall not exceed $300. It is provided, however, that this amendatory act shall not affect any pending litigation. Acts 1903, p. 37, §5187 Burns 1905.

The complaint upon which the cause was tried in the lower court consists of 404 paragraphs, each of which alleges a separate and distinct violation on the part 1. of appellant company. These separate paragraphs embraced alleged violations from June 25, 1901, and each day thereafter to October 9, 1901, inclusive. Upon each paragraph the State demanded a recovery of $25 as a penalty, and a total demand of over $10,000. Appellant appeared to the action, and petitioned the court to transfer the cause to the federal court on the ground of diverse citizenship, said petition disclosing that appellant is a corporation organized and existing under and by virtue of the laws of the state of Virginia; that it is a resident and citizen of said state, and a nonresident of the State of Indiana, and that it had never been a resident or citizen of the latter State. The petition further disclosed that the amount in controversy in this action, exclusive of interest and costs, exceeded the sum of $2,000. The court denied the petition for removal, and upon this ruling appellant predicates error.

A state can not be regarded as a citizen of any state. Consequently an action between the state, in which it is the real party in interest, and a citizen or corporation of another state, can not be removed from the state court to the federal court solely on the ground of diverse citizenship. *Upshur County* v. *Rich* (1890), 135 U. S. 467, 10 Sup. Ct. 651, 34 L. Ed. 196; *Postal Tel. Cable Co.* v. *Alabama* (1894), 155 U. S. 482, 15 Sup. Ct. 192, 39 L. Ed. 231; *Indiana* v. *Alleghany Oil Co.* (1898), 85 Fed. 870; *Huntington* v. *Attrill* (1892), 146 U. S. 657, 672, 13 Sup. Ct. 224, 36 L. Ed. 1123; *Ames* v. *Kansas, ex rel.* (1884), 111 U. S. 449, 4 Sup. Ct. 437, 28 L. Ed. 482; *State of Indiana* v. *Tolleston Club* (1892), 53 Fed. 18; 18 Ency. Pl. and Pr., 190, and authorities cited; Black's Dillon, Removal of Causes, §81. In this latter authority it is said: "Since, in the nature of things, a state can not be a 'citizen' of a state, the federal courts have no jurisdiction, on removal from a state court on the ground of diverse citizenship, of a suit between a private individual and a state, whether the former be a citizen of the same or of a different state; such a controversy can not, in any just sense, be said to be 'between citizens of different states.'"

In *Huntington* v. *Attrill, supra,* the court said: "Beyond doubt (except in cases removed from a state court in obedience to an express act of congress in order to protect rights under the Constitution and laws of the United States) a circuit court of the United States can not entertain jurisdiction of a suit in behalf of the state, or of the people thereof, to recover a penalty imposed by way of punishment for a violation of a statute of the state."

Counsel for appellant, however, insist that the State of Indiana can not be considered as the real party in interest, for the reason that under the provisions of the 2. statute in question one-half of the amount recovered goes to the prosecuting attorney and the remainder is to be paid over to Dubois county, wherein the action

arose, to become a part of the common school fund of that county. This contention is untenable, and is at variance with the holding in the case of *Indiana* v. *Alleghany Oil Co., supra.* An action under the statute herein mentioned is, within the meaning thereof, instituted and prosecuted by the State in the interest of the public. The State may, therefore be said to be the real party in interest. The recovery of the penalty is by the State, and not by the prosecuting attorney, nor the county. The mere fact that a moiety of the money recovered is directed by the statute to be paid to this official does not change the public character of the proceeding. *State, ex rel.,* v. *Halter* (1898), 149 Ind. 292; *Pennsylvania Co.* v. *State* (1895), 142 Ind. 428. It follows that there was no error in denying the petition to remove the cause to the federal court.

Appellant unsuccessfully demurred to each paragraph of the complaint, and thereupon filed its answer of general denial. All of the paragraphs are substantially alike, except as to the particular dates, trains, and the schedule time of arrival. A statement, therefore, of the material facts alleged in one will suffice. The first paragraph, after disclosing that the defendant is a railway corporation duly organized under the laws of the state of Virginia, and that it owns and operates a railroad within the State of Indiana, from Evansville, through Dubois county, to Jasper, Indiana, and to Louisville, Kentucky, and also to St. Louis, Missouri, alleges: "That said defendant keeps, maintains and has a railway station upon its said railway route in said Dubois county, at Johnsburg postoffice, which it designates and calls 'Ferdinand Station,' and that at said Ferdinand Station at the time hereinafter alleged said defendant maintained and kept a telegraph office in connection with its said line of railway; that said defendant owned, operated and ran a regular passenger-train on said route from Evansville, Indiana, to Jasper, Indiana, passing by and through said Ferdinand Station;

that said passenger-train, so owned and operated by said
defendant, traveling upon said route between said stations
as aforesaid, was due and scheduled to arrive and stop at
said Ferdinand Station at 2:35 o'clock p. m. on the 25th
day of June, 1901, and that said passenger-train did pass
by and stop at said Ferdinand Station on said day; that
said defendant then and there unlawfully failed and neg-
lected to cause to be written upon a blackboard placed in a
conspicuous place in the passenger depot of said company at
said telegraph office and said station, at least thirty minutes
before the scheduled time for the arrival of said passenger-
train, the fact whether said train was on schedule time or
not, and if late, how much late; and that at said time and
hour, to wit, thirty minutes before the scheduled time for
the arrival of said passenger-train, the defendant regularly
employed and had on duty at said Ferdinand Station a
telegraph operator." The paragraph further discloses that
the defendant did not then and there have any device, indi-
cator, etc., for use instead of a blackboard in giving infor-
mation as to whether its trains were on schedule time, and
the further fact that the train mentioned in the paragraph
was not then and there a freight-train carrying passengers,
etc.

Several objections are urged by appellant's counsel
against the sufficiency on demurrer of each paragraph of the
complaint. Principal among these is the contention that the
averments therein relative to appellant's failure to make
a report do not show or mean either "grammatically or log-
ically" that no report was made, but, upon the contrary,
do disclose or admit that some report was made. The gist
of the offense under the provisions of the statute in ques-
tion is the failure or neglect to report the fact by the
method prescribed by the statute, not less than thirty min-
utes before the schedule time for the arrival of the expected
train, whether it is on time or not, and if late, "how much
late." The failure to make such a report, or the making of

a false report, is made an offense by the statute.　As shown, the complaint fully negatives the fact that appellant had any device, indicator or register as a substitute for a blackboard for giving the required information.　The paragraph in controversy alleges substantially, in the language of the statute, the failure of appellant to make upon a blackboard, placed in a conspicuous place in its passenger depot at the station mentioned, the required report in regard to the arrival of the particular train.　There is no attempt on the part of the pleader to charge the appellant with having made a false report, and under the facts as alleged there is no room for the contention that the pleading can be said to show that a report of any kind was made by appellant at the time in question.　In considering the sufficiency of the paragraph, the court will not indulge in surmises or conjectures in favor of either party.　We have considered all of the objections interposed by appellant relative to the sufficiency of the complaint, and, while the pleading might be improved in some respects, nevertheless we are constrained to hold that it is good on demurrer, and that the ruling of the court thereon was proper.

Ferdinand Station, where the offenses in question are alleged to have been committed, is a small station on the line of appellant's railway, situated in Dubois county, Indiana.　At this station there is one store and a saloon owned and conducted by Peter Schell.　The saloon is located immediately across the railroad tracks from the depot.　Said Schell at the trial was introduced and testified as a witness on behalf of the State relative to appellant's failure to post on a blackboard, which it kept and maintained at its depot at said station for that purpose, the arrival of its trains.　He, as shown, was employed by the prosecuting attorney, who resided in Dubois county, to watch and examine this blackboard each day, and keep a memorandum of appellant's failure to report the arrival of any of its trains, and for his services he was to be paid

by said official $1 for each case that was made "to stick" against appellant upon a prosecution. Schell appears to have zealously and faithfully served said official in this business for a period of time running from June 25, 1901, to the 10th day of the following October. This witness during the period of his services appears to have made up some three books with memoranda or notations in regard to various or multiplied failures on the part of appellant to bulletin its trains. As each of these books was filled with notations or memoranda in respect to appellant's neglect, the witness would send it to the prosecuting attorney for the use of the latter. A day or two after the third book was sent to the prosecutor, which was about the 10th day of October, 1901, an action seems to have been commenced by the prosecuting attorney against appellant, and thereafter, according to the statements of this witness, the company fully complied with the requirements of the law. Another witness, who testified for the State in regard to appellant's omissions to report the arrival of its trains, admitted on cross-examination that the prosecuting attorney had promised to pay him $25 for going to Ferdinand Station on a certain day to watch and examine the blackboard kept in said station, and when called into court to testify what he observed as to the posting of trains thereon. This witness was only to receive the money upon the contingency that the prosecutor succeeded in making the cases "stick" which the witness reported and to which he testified. Otherwise he was not to receive the promised compensation.

Appellant, by its counsel, at the proper time requested the trial court to give to the jury two certain instructions, numbered nine and ten, which instructions, as requested, are as follows: "(9) If you find from the evidence that any witness was employed to procure evidence for the plaintiff, and was to be paid the sum of $1 for each violation of the law the plaintiff should succeed in establishing, and that he was to receive nothing for any paragraph of complaint

plaintiff should fail to establish, then you should consider such facts in determining what weight should be given to the testimony of such witness. (10) If you should find from the evidence that any witness in the case was promised the sum of $25 by the prosecuting attorney of the plaintiff in this case, and that the payment of said sum was contingent upon the success of the plaintiff in this case, then you should consider such promise of money in determining what weight should be given to the testimony of such witness."

The court, however, declined to give these instructions as requested, but modified each of them by substituting therein for the word "should" the word "may," making the charge read "may consider," instead of "should consider" as requested, and further changed each of them by adding thereto the following: "But you can consider it for no other purpose than for the purpose of determining such witness's credibility." The court gave each of the instructions as modified. Appellant's counsel very forcibly and with much reason insist and argue that it was the legal right of appellant to have the court advise the jury that they "must," or at least "should," consider the facts mentioned in the instructions, if found to be true, for the purpose of testing the credibility of the witnesses, instead of advising them that they "may," as the court did by reason of the modification in question. In this contention we concur. As shown by the evidence, there were at least two witnesses who testified on behalf of the State to which the instructions in controversy were applicable.

The State's most important testimony appears to have been given by the witness Schell, who was to receive, according to his own admission, $1 for each case in which the appellant was convicted, and by the other witness, who, according to his own statement, was to be paid $25 in the event a conviction was secured in the cases which he reported to the prosecuting attorney and testified to in court. These

Southern R. Co. *v.* State—165 Ind. 613.

two witnesses were certainly interested in a pecuniary sense in securing the conviction of appellant. It was the imperative duty of the jurors to consider the facts relative to such interest in determining what weight or credibility should be accorded to the testimony of these witnesses. It was, therefore, the legal right of appellant to have the jurors informed by the court in positive terms in regard to the duty imposed upon them by the law under the circumstances. The word "should" in the instructions requested served the purpose of advising the jurors in respect to the imperative duty, under the circumstances, exacted of them by law, much better than the word "may," and in no sense would the use of the word "should" have been an invasion by the court upon the province of the jury. Our holding herein is fully sustained by the cases of *Deal* v. *State* (1895), 140 Ind. 354, 368; *Smith* v. *State* (1895), 142 Ind. 288, 292; *Fifer* v. *Ritter* (1902), 159 Ind. 8; *Strebin* v. *Lavengood* (1904), 163 Ind. 478; and *Indianapolis St. R. Co.* v. *Johnson* (1904), 163 Ind. 518.

Our decision in this appeal upon the point in controversy, however, is not to be construed as holding that where a trial court in a cause, in giving on its own motion, and not over the objection of a party, an instruction of the character of those involved herein employs the word "may," instead of the words "should" or "must," such action of the court will alone constitute reversible error.

5.

The action of the court in inserting in the instructions in dispute the words "but you can consider it for no other purpose than for the purpose of determining such witness's credibility" was proper, and the contention of appellant's counsel that thereby the court erred is not sustained. It may, however, be said that the charge in this respect would have been more positive had the court used the word "should" instead of "can." It follows that the court erred to the prejudice of appellant in modify-

6.

ing the instructions in controversy by substituting therein the word "may" for "should," and in giving the charges to the jury as so modified.

Appellant further complains of the refusal of the court to give other instructions upon request. Upon an examination, however, we are satisfied that some of the charges in question were refused for the reason apparent that under the evidence they did not correctly state the law. Others seemingly were refused because they were substantially covered by those given by the court. By the eleventh instruction appellant requested the court to state to the jury that it had the legal right to subpoena its own witnesses and transport them to the place of trial. This charge was applicable to evidence given which disclosed that appellant subpoenaed some of its witnesses and furnished them with transportation to the place of trial. Under the circumstances it would have been proper for the court to give the instruction in question, but its refusal to do so can not be held to be reversible error.

Peter Schell, as previously shown, was a witness on behalf of the State. He was procured, as heretofore disclosed, to watch and examine the blackboard at appellant's station, and in the performance of this service he kept memoranda relative to what the blackboard disclosed in regard to appellant's failure to post the arrival of its trains on certain dates. A day or two before he was examined as a witness he appears to have made, in what is termed a "fourth book," a condensed copy of the memoranda as originally made by him. This witness apparently was confronted with much difficulty in testifying independently of the memoranda which he had made in three books. He was permitted by the court to refresh his memory therefrom as to what he observed or saw when he examined the blackboard at appellant's station on the various days between June 25, 1901, and October 10 of the same year. The witness admitted in his answer to the ques-

tion propounded by appellant's counsel that he had no recollection of the transactions in question, and that he depended upon all four of the books, including the one which contained a condensed copy, to refresh his memory. In fact, the admissions or statements of the witness made in court at the time he testified disclose that in the main he had no present recollection, independent of the memoranda, relative to the failures, about which he testified, of appellant to report the arrival of its trains on the various days embraced in the period of time in controversy. While it was proper for this witness to refresh or stimulate his memory by reference to the original memoranda, still as a general rule he could not be permitted to testify wholly or entirely therefrom, which, to some extent at least, he apparently did. It was essential that he possess some knowledge or recollection independent of the memoranda, or, in other words, it could not be substituted instead of the recollection of the witness. This is the rule adhered to and enforced at least in this jurisdiction. *Clark* v. *State* (1853), 4 Ind. 156; *Johnson* v. *Culver* (1888), 116 Ind. 278; *Sage* v. *State* (1891), 127 Ind. 15, 25. As affirmed by Lord Ellenborough in *Henry* v. *Lee* (1814), 2 Chit. 124: "It is not the memorandum that is the evidence, but the recollection of the witness."

The memoranda in question were neither made in the ordinary course of business nor in the pursuance of some duty owing by the person who made them to make the same correct. They were no part of the *res gestae,* but were mere private memoranda, which ordinarily were not competent evidence, although the correctness thereof may be verified by the testimony of a witness or witnesses. Gillett, Indirect and Collat. Ev., §186. It may be further said, however, that under the statements of the witness relative to the private memoranda no case was presented which would authorize their admission in evidence.

Appellant appears to have unsuccessfully made several motions to strike out and reject the evidence of the witness Schell, given relative to the neglect of appellant to bulletin its trains during the period of time in controversy. It is insisted by its counsel that his testimony should have been rejected for two reasons at least: (1) Because the memoranda in question were admitted indirectly in evidence under the guise that the witness was refreshing his memory therefrom; (2) because the witness refreshed his memory partly from the original memoranda and partly from a copy thereof. While some of this witness's testimony ought to have been rejected, because as to a portion thereof he testified entirely from his memoranda, and not from his recollection after refreshing his memory, still appellant is not in the position successfully to complain of the court's adverse ruling upon its motions for the reasons: (1) That they were too broad, embracing as they did all of the evidence given by the witness; (2) no grounds were assigned in the motions for rejecting the evidence in question, except in one where it was stated that the witness had refreshed his memory partly from his original memoranda and partly from a copy thereof. If the witness relied on a copy of the original for the purpose of stimulating or reviving his memory in regard to the transaction in question, appellant should have interposed proper objections; for the rule is that the original memorandum must be shown to have been lost or destroyed before the witness can be permitted to resort to a copy thereof for the purpose of refreshing his memory.

The insistence of counsel that the court erred in denying appellant's motion to require the State to elect upon which paragraph of its complaint it would rest the prosecution can not be sustained. The further contention that only a single penalty can be recovered in this action is against the plain provisions of §5187

Burns 1901, Acts 1889, p. 272, §2, which declares that for "each violation of the provision of this act, in failing to report or in making a false report, such corporation * * * shall forfeit and pay the sum of $25." The particular question was raised and decided adversely to appellant's contention in *State* v. *Indiana, etc., R. Co.* (1892), 133 Ind. 69, 18 L. R. A. 502.

For the errors arising out of the court's modification of instructions numbered nine and ten, requested by appellant as herein pointed out, the judgment below is reversed, with instructions to grant appellant a new trial.