**Shorobbie CARTER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 3–380A79.**

Court of Appeals of Indiana, Third District.

Nov. 25, 1980.

Harriette Bailey Conn, Public Defender, Robert H. Hendren, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Shorobbie Carter guilty of robbery while armed with a deadly weapon.[1] Carter was sentenced to the Indiana Department of Correction for a period of ten years.

On appeal, Carter raises six issues for our review:

(1) Whether the trial court erred in not striking from the record the testimony of a witness who, after refreshing his recollection by examining a police report, could not verify the accuracy of the police report;

(2) Whether the trial court erred in permitting a police officer to relate the post–arrest statements made by one of Carter's accomplices;

(3) Whether the trial court erred in permitting one of Carter's accomplices to testify that a videotape confession he made was admitted into evidence during his trial for the same robbery for which Carter was being prosecuted;

(4) Whether the trial court erred in sustaining the State's objection to a cross–examination question asking for a witness' opinion of Carter's state of mind at the time of the robbery;

(5) Whether the trial court erred in denying Carter's motion for mistrial;

(6) Whether sufficient evidence supported Carter's conviction.

We affirm.

## I.

### Recollection Refreshed

Carter contends that the trial court erred in not striking from the record the testimony of Officer Manlove. During direct examination, Manlove refreshed his recollection of the amount of money found in the coat lining of Irey Hughes, one of Carter's accomplices, by examining a police report prepared by Sergeant Hathaway in conjunction with the arrests of Carter and his accomplices. During cross–examination, Manlove read into the record, at Carter's request, a section of the police report which revealed that Sylvester Alexander, the victim of the robbery who was taken to the scene of the arrests to identify the suspects, was not sure if Carter participated in the robbery. At trial, Alexander positively identified Carter as one of the participants in the robbery. Carter asked Manlove if the police report read into the record "truly reflects what happened at the scene?" Manlove replied that he could not verify the accuracy of that section of the report because he was not present when Alexander made his equivocal identification of Carter. Because Manlove could not verify the accuracy of the entire police report, Carter moved to have all of Manlove's testimony stricken from the record. The trial court denied his motion.

Indiana has long permitted the use of written memoranda to refresh the recollection of a forgetful witness. *Richardson*

1. IC 1976, 35 42 -5–1 (Burns Code Ed., Repl. 1979).

*v. State* (1971), 255 Ind. 655, 266 N.E.2d 51;[2] *Southern R. Co. v. State* (1905), 165 Ind. 613, 75 N.E. 272; *Clark v. State* (1853), 4 Ind. 156. The foundational requirements for this rule were firmly established when the Supreme Court stated:

" A witness may be permitted to refresh his memory of facts, by referring to a written memorandum, written either by himself or by another, at or near the time of the occurrences; but the memorandum cannot be substituted in the stead of the recollection of the witness.

"If an inspection of the writing recalls to the mind of the witness facts which he had previously known, but which had, at the moment, escaped his recollection, he can then testify to such facts as being within his own personal knowledge."

4 Ind. at 157. In *Southern R. Co., supra,* the Court further emphasized the requirement that the witness must have had independent knowledge of the facts contained in the written memorandum before it could be used to refresh the witness' recollection:

"While it was proper for this witness to refresh or stimulate his memory by reference to the original memorandum, still as a general rule he could not be permitted to testify wholly or entirely therefrom, which to some extent at least he apparently did. It was essential that he possess some knowledge or recollection independently of the memorandum, or, in other words, it could not be substituted instead of the recollection of the witness. This is the rule adhered to and enforced at least in this jurisdiction."

165 Ind. at 625, 75 N.E. at 276.

■ The State satisfied the foundational requirements for using the police report to refresh Manlove's recollection of the amount of money found in Hughes' coat lining. While Manlove was not present when other officers took the money from Hughes, Manlove later counted the money twice in the presence of two officers and delivered the money to Detective Stoops. Manlove had at one time independent knowledge of the amount of money taken from Hughes, but that amount escaped Manlove's memory at trial. After examining the police report, Manlove revived his memory to the fact that he had counted $426.10 on the day of Hughes' arrest.

Carter correctly contends that the section of the police report read into the record at Carter's request should have been stricken. Manlove admitted that he did not have independent knowledge of the facts contained in that section of the report. By reading from the report, Manlove did not testify from his memory but rather related another person's observations that were beyond Manlove's knowledge. Technically, the trial court should have stricken that portion of Manlove's testimony relating to Alexander's equivocal identification of Carter. However, we find the error to be harmless. The erroneous admission of the section of the report read by Manlove actually benefited Carter in that it casted doubt upon the positive identification of Carter made by Alexander at trial. Therefore, we find no reversible error in the trial court's denial of Carter's motion to strike Manlove's testimony.

## II.

### *Patterson* Rule

■ Carter contends that the trial court erroneously permitted Officer Crawford to relate, over Carter's objection, the substance of the post–arrest statements made by Irey Hughes, one of Carter's accomplices. Carter asserts that Hughes' statements, which incriminated Carter and Hughes, were admitted into evidence through the trial court's misapplication of

2. Justice DeBruler's dissenting opinion in *Richardson* should be examined. Two other justices recognized it as an accurate statement of Indiana law on present recollection refreshed. The majority opinion failed to delineate the narrow distinction between present recollection refreshed and past recollection recorded. The distinction between these two rules of evidence may be better understood by comparing Justice DeBruler's dissent in *Richardson* with *Gee v. State* (1979), Ind., 389 N.E.2d 303, 309–10, a case involving a police report used as past recollection recorded. *See also,* Seidman, *Indiana Evidence* 16, n. 11 (1977).

the *Patterson* Rule. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482. The *Patterson* rule was recently summarized as follows:

"Briefly stated, the *Patterson* rule is that a prior statement of a witness is admissible, not only for purposes of impeachment, but also as *substantive evidence*, provided the out–of–court asserter is present at trial for cross–examination...

"The rationale behind the rule is that the dangers inherent in admitting hearsay testimony are obviated if the asserter can be cross–examined...." (Citations omitted) (Original emphasis)

*Smith v. State* (1980), Ind.App., 400 N.E.2d 1137, 1141. Extrajudicial statements are substantively admissible even if their ·declarant repudiates the veracity of the statements. *Moten v. State* (1978), Ind., 380 N.E.2d 544, 546. Both consistent and inconsistent extrajudicial statements are admissible under the *Patterson* rule. *Carter v. State* (1977), 266 Ind. 196, 198, 361 N.E.2d 1208, 1209, *cert. denied*, 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142.

■ Carter concedes that the *Patterson* rule permits the use of extrajudicial statements as substantive evidence, but he contends that certain prerequisites, which Carter characterizes as foundational requirements, must be satisfied before extrajudicial statements may be substantively admitted under the *Patterson* rule. This foundation, Carter asserts, should include the requirements that the extrajudicial declarant be confronted with the extrajudicial statements while on the witness stand and that the declarant acknowledge or disavow the making of the statements before they are admitted into evidence. Carter's suggested foundational requirements are similar to the foundation required for the admission of prior inconsistent statements for impeachment purposes. *See, Bemis Co., Inc. v. Rubush* (1980), Ind.App., 401 N.E.2d 48, 62.

In support of his contention, Carter directs us to the following statement which appears in *Stone v. State* (1978), 268 Ind. 672, 377 N.E.2d 1372:

"The State brought forth the text of his statements *only after* he testified in a manner inconsistent with them, and therefore they were admissible in evidence under the *Patterson* rule as originally conceived...." (Emphasis added.). 268 Ind. at 678, 377 N.E.2d at 1375. Relying on this sentence, Carter asserts that the trial court misapplied the *Patterson* rule by permitting Officer Crawford to relate Hughes' extrajudicial statements *before* Hughes testified and had an opportunity to acknowledge or disavow the making of the statements attributed to him.

A careful reading of the *Patterson* case leads us to the conclusion that our Supreme Court originally intended to include the foundational requirements suggested by Carter. The brief but pertinent section of *Patterson* which supports Carter's contention provides:

"[T]he out–of–court asserters, Miss Robinson and Mrs. Patterson were upon the witness stand at the time their out–of–court assertions were offered. Neither denied giving the statements attributed to her, nor did either profess ignorance of such statements. It was, therefore, not necessary for the truth of the out–of–court assertions to rest upon the credibility of persons not present and then subject to cross–examination concerning the statements. Under such circumstances, since the matters asserted were relevant to the issues, there was no reason to reject the statements, as substantive evidence, simply because they had been made at a time when the witnesses were not subject to cross–examination. This view is in accord with, although not as liberal as, those expressed by Wigmore on Evidence (Chadbourn Revision) § 1018, McCormick on Evidence, 2d Ed., § 251, The Uniform Rules of Evidence, Rule 63(1) and The Model Code of Evidence, Rule 503(b)...."

263 Ind. at 58, 324 N.E.2d at 484–85. We believe the Supreme Court intended the first two sentences of the quote from *Patterson* to be integral parts of the *Patterson* rule. The extrajudicial declarants were available for cross–examination concerning

their extrajudicial statements because they were testifying at the time their statements were offered into evidence *and* neither declarant denied nor failed to recollect making the statements. "Under such circumstances," the extrajudicial statements were admissible as substantive evidence. The logical corollary of the Court's holding is that the extrajudicial statements would not have been substantively admissible if (1) they were offered before their declarants testified and had an opportunity to acknowledge making the statements, or (2) they were offered before the declarants, while testifying, denied or failed to recollect making the statements. The Court strictly construed the words "available for cross—examination" to mean: that the declarants were physically present in the courtroom; that the declarants had acknowledged or had disavowed making the statements; and, that the declarants' testimony concerning the statements could have been subject to cross—examination. While the Court failed to articulate its reasons for imposing such limitations on the *Patterson* rule, it may be presumed that the Court believed that a witness could not be effectively cross—examined about extrajudicial statements which the witness denied or failed to recollect. These limitations also provide some assurance that the statements were actually made and were not misquoted, inaccurately transcribed, or even manufactured.

Further support for our interpretation of *Patterson* may be extrapolated from the Supreme Court's position that the *Patterson* rule is "not as liberal as" the position taken by Wigmore, McCormick, the Uniform Rules of Evidence, and the Model Code of Evidence. The Uniform Rules and the Model Code would apparently admit inconsistent extrajudicial statements as substantive evidence despite the declarant's lack of present recollection of making the statements or the underlying event. *See*, Uniform Rules of Evidence, Rule 63(1), Comment (1953); Model Code of Evidence, rule 503(b), Comment *b*, at 234 (1942). While

Wigmore and McCormick subscribe to a liberal interpretation of the evidentiary rule, it is not readily apparent that they would permit the substantive admission of extrajudicial statements which the declarant, in good faith, denies or fails to recollect. *See* 3A Wigmore, *Evidence* § 1018 (Chadbourn rev. 1970); *compare* McCormick, *Evidence* § 251 (2d ed. 1972), with McCormick, *Evidence* § 39 (1st ed. 1954), and McCormick, *The Turncoat Witness: Previous Statements as Substantive Evidence*, 25 Tex.L. Rev. 573 (1947). Assuming that our Supreme Court viewed the Uniform Rules, the Model Code, Wigmore, and McCormick as permitting the substantive use of extrajudicial statements despite the declarant's lack of present recollection, it is clear that the Indiana Supreme Court did not intend the *Patterson* rule to be as extensive as that position. Thus, we believe our interpretation of the *Patterson* rule to be consistent with its original concept.

We have found two reported decisions in which the extrajudicial statements of witnesses were admitted as substantive evidence before the witnesses testified and acknowledged making the statements. *Brown v. State* (1979), Ind., 390 N.E.2d 1000; *Flewallen v. State* (1977), 267 Ind. 90, 368 N.E.2d 239. In *Brown*, a police officer related the statements of the victim of the crime before the victim testified. Later in the trial, the victim testified consistently with his extrajudicial statements. In *Flewallen*, five statements were given by witnesses to the police after the defendant's arrest. Four of these statements were read to the jury before the witnesses testified. While the extrajudicial statements of the four witnesses were in greater detail than their in—court testimony, their statements were basically consistent with their testimony at trial. In neither case did the Supreme Court address the procedural defect in presenting the extrajudicial statements.[3] The Supreme Court's failure to strictly enforce the foundational requirements of the *Patterson* rule in *Brown* and *Flewallen* apparently stemmed from the nature of the

---

**3.** Justice DeBruler predicated his dissent in *Flewallen* on the majority's deviation from the foundational requirements of the *Patterson*

rule. *Flewallen, supra*, 267 Ind. at 97, 368 N.E.2d at 243.

extrajudicial statements in both cases. The statements were consistent with their declarants' in–court testimony. Any error in failing to have the declarants acknowledge making the statements before admitting them into evidence was cured by the declarants' subsequent affirmance of the statements when they testified. No harm resulted from the deviation from the *Patterson* rule in either case. Thus, we do not view *Brown* and *Flewallen* as the Supreme Court's retraction of the foundational requirements of the *Patterson* rule.

We conclude that the trial court erred in permitting Officer Crawford to relate Irey Hughes' post–arrest statements before Hughes acknowledged making the statements. However, the error was subsequently cured when Hughes was called as a witness for the State, and he admitted making the incriminating statements. The foundational requirements of the *Patterson* rule were satisfied: Hughes admitted making the statements, and he was available for, and in fact underwent, cross–examination about the statements. Perhaps the procedural defect in establishing the foundational requirements of the *Patterson* rule may have been attributed to the State's knowledge before trial that Hughes would be a "turncoat" witness, or one who repudiates the veracity of incriminating extrajudi-

cial statements and offers in–court testimony which exculpates the defendant and himself. The State knew that it would have to prove the substance of the statements by calling to the witness stand the person to whom the statements were made. In the present case, Officer Crawford performed that function. However, the better procedure would have been to call Hughes as a witness first in order to elicit direct testimony which incriminated Carter. If Hughes attempted to exculpate Carter and the State knew that Hughes had made pretrial statements that incriminated Carter, then the extrajudicial statements could have been proven by extrinsic evidence. The only limitation imposed on such a procedure is that Hughes must have acknowledged making the statements. His subsequent repudiation of the veracity of the statements would not have affected their admissibility as long as he admitted that the statements were in fact made.

■ We do not find reversible error in the trial court's application of the *Patterson* rule.[4]

### III.

### Videotape Confession

■ Carter contends that the trial court erroneously permitted Irey Hughes to

---

4. We are cognizant of the Supreme Court's recent condemnation of unjustifiable extensions of the *Patterson* rule by the bench and the bar. *See, Stone v. State* (1978), 268 Ind. 672, 678, 377 N.E.2d 1372, 1375; *Samuels v. State* (1978), 267 Ind. 676, 679, 372 N.E.2d 1186, 1187. The Court objected to the use of the *Patterson* rule to admit extrajudicial statements "as a mere substitute for" and "in lieu of" direct testimony. We share the Court's concern and extend it to the situation where extrajudicial statements attributed to a particular person have been admitted into evidence before that person acknowledges making the statements.

We are particularly concerned with the use of extrajudicial statements as substantive evidence where the alleged declarant denies or fails to recollect making the statements or claims a loss of memory to the facts of the underlying event to which the statements relate. Under our interpretation of the *Patterson* rule, denied or unrecalled statements are inadmissible as substantive evidence. The admis-

sion of extrajudicial statements under such circumstances may constitute a violation of the confrontation clause of the Sixth Amendment. Many commentators have argued that the party against whom the statements are being offered cannot elicit an adequate explanation of the statements, test the alleged declarant's memory and perception of the underlying event to which the statements relate, or expose suspicious circumstances under which the statements were made. *See*, Beaver & Biggs, *Attending Witnesses' Prior Declarations as Evidence: Theory v. Reality*, 3 Ind.L.F. 309 (1970); Bein, *Prior Inconsistent Statements: The Hearsay Rule*, 801(d)(1)(A) and 803(24), 26 UCLA L.Rev. 967 (1979); Falknor, *The Hearsay Rule and its Exceptions*, 2 UCLA L.Rev. 43 (1954); Graham, *The Confrontation Clause, the Hearsay Rule, and the Forgetful Witness*, 56 Tex.L. Rev. 151 (1978); Reutlinger, *Prior Inconsistent Statements: Presently Inconsistent Doctrine*, 26 Hastings L.J. 361 (1974). These commentators rely on the United States Supreme Court's

testify that his videotape confession to the robbery for which Carter was being prosecuted was admitted into evidence during his trial. At trial, Carter predicated his objection to such testimony on the irrelevancy and immateriality of any evidence of Hughes' videotape confession. On appeal, Carter combined this alleged error with Issue II and asserted that the trial court misapplied the *Patterson* rule in admitting such evidence. Without commenting on the cogency of Carter's argument, we find that Carter has failed to present a question for appellate review. Carter's challenge to the trial court's admission of the evidence differs from the grounds urged at trial. Grounds for objection to the admission of evidence asserted on appeal may not differ from those asserted at trial. *Phelan v. State* (1980), Ind., 406 N.E.2d 237, 239.

## IV.

### State of Mind

Carter contends that the trial court erred in sustaining the State's objection to the following question posed to Irey Hughes during cross–examination:

> "Q When you went to the store that day, did–to your knowledge, did the defendant, Mr. Carter, know that you were going to rob that store?"

Carter asserts that the trial court's limitation on cross–examination deprived him of his constitutional right to confront the witnesses against him.

 The question posed to Hughes asked him to express his opinion as to Carter's state of mind at the time of the robbery. A person's opinion as to the state of mind of another person is not competent evidence. *Strickland v. State* (1977), 265 Ind. 664, 669, 359 N.E.2d 244, 248; *Davis v. State* (1976), 265 Ind. 476, 481, 355 N.E.2d 836, 840. In *Strickland*, the Supreme Court stated:

> "Generally, the opinion rule excludes any eyewitness's conclusion as to the state of mind of another person. This is the province of the jury, which is equally able to infer a person's state of mind or

mandate that extrajudicial statements are substantively admissible as long as the declarant is subject to "full and effective" cross–examination. *California v. Green* (1970), 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 497. Some jurisdictions have not accepted the theory that cross–examination cannot be "full and effective" where the alleged declarant denies or fails to recollect making the statements. These jurisdictions leave the admissibility of unacknowledged statements to the discretion of the trial court where it is believed that the alleged declarant is fabricating his denial or feigning his loss of memory. *E.g., United States v. Rogers* (8th Cir. 1976), 549 F.2d 490, *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229; *United States v. Payne* (4th Cir. 1974), 492 F.2d 449, *cert. denied*, 419 U.S. 876, 95 S.Ct. 138, 42 L.Ed.2d 115; *United States v. Insana* (2d Cir. 1970), 423 F.2d 1165, *cert. denied*, 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76; *State v. Lenarchick* (1976), 74 Wis.2d 425, 247 N.W.2d 80. Two cases even rejected a good faith denial or memory loss and permitted the substantive use of the extrajudicial statements. *United States ex rel. Thomas v. Cuyler*, (3d Cir. 1977), 548 F.2d 460; *People v. Pepper* (1977), 193 Colo. 505, 568 P.2d 446.

Indiana does not follow the position taken by the jurisdictions discussed above. The *Patterson* rule prohibits the substantive admission of

denied or unrecalled extrajudicial statements. However, we do not believe that the Supreme Court intended to impose a blanket exclusion on all extrajudicial statements not acknowledged by their alleged declarants. A blanket exclusion imposes a serious hardship on a party who can establish that the alleged declarant who denies or fails to recollect making the statements is in fact fabricating his denial or feigning his loss of memory. The hardship and injustice of a blanket exclusion become readily apparent when the declarant's extrajudicial statements are in writing or electronically recorded, and the writing or the tape (audio or video) can be properly authenticated. One Indiana court has already reached the conclusion that written statements are admissible under the *Patterson* rule despite the declarant's non–affirmative responses to questions regarding the statements. *Lloyd v. State* (1975), 166 Ind. App. 248, 256, 335 N.E.2d 232, 237.

However, we cannot extend the *Patterson* rule to oral extrajudicial statements attributed to a witness who the trial court believes to be fabricating his denial or feigning his loss of memory. Whether Indiana follows other jurisdictions which vest in the trial court the discretion to admit into evidence extrajudicial statements under such circumstances is a matter that must be left for resolution by our Supreme Court.

emotions from testimony limited to particular facts and circumstances observed by the eyewitness. Although there is authority for a different view, the jury determines the psychological facts; the witness is limited in his testimony to the indicia he observed...."

265 Ind. at 669, 359 N.E.2d at 248. The question posed in *Strickland* is strikingly similar to that in the present case:

"Q. To the best of your knowledge, is there any fact within your knowledge that would lead you to believe that Mr. Strickland had any malice towards Mr. Logan?"

The Court in *Strickland* interpreted the question as inextricably mixing fact and opinion, although the defendant's attorney believed he was seeking facts. The Court held that the trial court properly refused to permit the witness to express an opinion on an ultimate fact such as malice.

We reach the same conclusion in the present case. Carter's attorney was attempting to elicit Hughes' opinion on Carter's intent in entering the store. Such an issue was for the trier of fact. The trial court properly sustained the State's objection to the question.

### V.

#### Mistrial

Carter contends that the cumulative effect of the alleged errors committed by the trial court justified the granting of his motion for mistrial which the trial court denied. Because we find that the trial court did not commit reversible error on any of the issues presented on appeal, the denial of Carter's motion for mistrial was proper.

### VI.

#### Sufficiency of Evidence

Carter contends that his conviction was based on insufficient evidence because Sylvester Alexander, the State's chief witness who positively identified Carter as one of the participants in the robbery, could not recall that Carter had a beard on the day of the robbery. The error alleged by Carter goes to the weight of the evidence and the credibility of Alexander. It is a well-stated rule of appellate procedure that we will not weigh the evidence or assess the credibility of the witnesses, but will consider only the evidence most favorable to the State. *Wash v. State* (1980), Ind.App., 408 N.E.2d 634, 636–37. Carter's conviction is supported by sufficient evidence.

Affirmed.

GARRARD, P. J., concurs.

HOFFMAN, J., concurs in Result with opinion.

HOFFMAN, Judge, concurring.

I concur only in the result since I do not adhere to the narrow application placed on the principle enumerated in *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482 by the majority opinion.